TOBIN, Secretary of Labor, v.
ALMA MILLS.

No. 6279.

United States Court of Appeals
Fourth Circuit.

Argued Oct. 2, 1951.

Decided Nov. 5, 1951.

Bessie Margolin, Asst. Sol., U. S. Dept. of Labor, Washington, D. C. (William S. Tyson, Sol., William A. Lowe and Leonard Appel, Attys., Washington, D. C., and Beverley R. Worrell, Regional Atty., U. S. Dept. of Labor, Birmingham, Ala., on the brief), for appellant and cross-appellee.

Zach McGhee, Columbia, S. C. (J. Claude Fort, Gaffney, S. C., on the brief), for appellee and cross-appellant.

Before PARKER, Chief Judge, and SOPER and DOBIE, Circuit Judges.

PARKER, Chief Judge.

This is an appeal in a suit instituted under the Fair Labor Standards Act, 29 U.S.C.A. § 201 et seq., by the Administrator of the Wage and Hour Division of the Department of Labor against Alma Mills, a cotton textile manufacturing corporation of Gaffney, South Carolina. A consent decree enjoining violations of the Act was entered in the year 1940. Nine years later, the defendant applied to the court to dissolve the injunction on the ground that the company had complied with its provisions over a long period, and that there was no longer any need to keep it in force. We were told at the bar of the court that the reason for the application was that the owners of the stock of the company wished to sell it and that the fact that the company was subject to the injunction was interfering with the sale. When the administrator was notified of the motion he asked for and was granted time to make an investigation of the company's operations. A thorough investigation was made under his direction and it revealed nothing tending to indicate a violation over the entire period except that, in the period 1946–1949, about half of the employees in the company's spinning department were accustomed to come to work in advance of the time when their hours of work began and engage in certain clean up activities which they were supposed to do on their regular eight hour shift. Of the 432 employees of the Alma Mills only 30 or 35 were working in the Spinning department and only about half of these were shown to have done this work out of regular hours. It was contended by the company that the work should have been done during the regular hours and could have been done then, that the company intended that it should be done then and that it has been done during regular hours since the attention of the company has been called to the matter. The trial judge found that the employees did this work out of regular hours for their own purposes, without the company's knowledge or con-

sent and against its orders. His findings on the subject, which are amply supported by the evidence, are as follows:

"The employee witnesses testified that during their employment from September, 1946, and until sometime in April, 1949, they came to work prior to the time for the shift on which they were to work began, and would perform certain clean-up activities, duties which they were supposed to do on their regular eight-hour shift. This work was done contrary to instructions which had been given them and without the knowledge or consent of the defendant. The witnesses testified that they had performed these activities prior to the start of their shift in order that the remaining duties which they were to perform during their regular shift would not be as hard; they did not expect any compensation for this pre-shift work.

\* \* \* \* \* \*

"The judgments permanently enjoining the defendants Alma Mills, Musgrove Mills and Vogue Mills from violating the provisions of the Fair Labor Standards Act were entered on August 23, 1940. All of these defendants are owned, managed, operated and dominated by substantially common officers, who are members of the same family. It is not contended that Musgrove Mills and Vogue Mills violated any of the provisions of the restraining orders. The testimony shows that the defendant Alma Mills has made bona fide efforts to comply with the provisions of the judgment against it, and that such defendant did not intentionally or willfully violate the provisions of the same. The violations were caused by the employees of the defendant Alma Mills acting for their own benefit and against the instructions and orders of such defendant."

On these findings, the District Judge adjudged the company in contempt because the work had been done on its premises out of hours without compensation and held that to purge itself it must pay overtime wages for the work thus done together with a compensatory fine to reimburse the Department of Labor for expenses incurred in making the investigation and presenting the case to the court,

limiting the award of wages, however, to the two year limitation period prescribed by the Portal-to-Portal Act, 29 U.S.C.A. §§ 251–262. He dissolved the injunction on the ground that it was no longer equitable that it have prospective operation. Both parties have appealed from the judgment. The company contends that there was error in adjudging it in contempt. The Secretary of Labor, who has been substituted for the Administrator of the Wage and Hour Division, contends that there was error in limiting the award of wages to the two year period and in dissolving the injunction.

■ On the facts as found by the District Judge, we think that there was error in adjudging the company in contempt. The case presented is not one where the acts constituting contempt were acts of the company, which would render it guilty of civil contempt even though done innocently and with no intent to violate the injunction, as in McComb v. Jacksonville Paper Co., 336 U.S. 187, 69 S.Ct. 497, 93 L.Ed. 599 or McComb v. Norris, 4 Cir., 177 F.2d 357. They were acts of employees which were done, so the judge finds, without the knowledge or consent of the company and against its express orders. We know of no authority which would justify a contempt order against one for acts which he did not commit and for which he was in no manner responsible. It should be noted that under the Act "employ" is defined to mean "suffer or permit to work" and it would appear that under the facts as found there was no violation of the act. Certainly there is no possible basis for adjudging the company guilty of contempt of court.

■ As there is no basis for the adjudication of contempt upon which the order for the payment of wages was made, the question as to whether the award was properly limited to the two year limitation period of the Portal-to-Portal Act becomes moot, and we come to the remaining question, viz., the propriety of the order dissolving the injunction. In considering this question, we are faced with the fact that the injunctive order had been in effect more than ten years at the time it was

dissolved. The judge found, and the evidence supports the finding, that the company had complied with it in good faith during that long period. A careful investigation was made and all that the diligence of zealous officers could find was the evidence to which we have adverted, as to labor out of hours of a very few out of a large number of employees engaged in without the knowledge or consent of the company and against its orders. There was no reason to apprehend that the company intended to violate the act in the future and not even any contention to that effect. The continuance of the injunction was hampering the owners of the company in disposing of their stock and was accomplishing no useful purpose. Under such circumstances we cannot say that there was any abuse of discretion in the action of the District Judge in dissolving it. Under the probation and parole laws, there is a limit to the time that persons who have committed even serious crimes are held under threat of punishment. Certainly there should be some limit to the time when an employer who has been guilty of nothing more than violation of a mere regulatory statute should be held to good behavior under threat of fine or imprisonment for contempt of court if he again offends.

 It is well settled that an injunctive order may be modified or dissolved in the discretion of the court when conditions have so changed that it is no longer needed or as to render it inequitable. 28 Am.Jur. 486; Ladner v. Siegel, 298 Pa. 487, 148 A. 699, 68 A.L.R. 1172; Grand Union Equipment Co. v. Lippner, 2 Cir., 167 F.2d 958, 960, 961; Coca-Cola Co. v. Standard Bottling Co., 10 Cir., 138 F.2d 788, 789; Food Fair Stores, Inc., v. Food Fair, Inc., 1 Cir., 177 F.2d 177, 185. Surely, such change of conditions is shown with respect to an injunction against the violation of a statute where it appears that the one enjoined has observed the provisions of the statute in good faith over a period of ten years and there is no present reason to apprehend violation by him. The whole business atmosphere of most corporations as well as their owner-ship and management have undergone radical changes after the lapse of so long a period; and there is no reason to hold them subject to such an injunctive order when changes of this sort have occurred and there is no further need of injunctive relief. Not only is there nothing shown here with respect to Alma Mills to justify apprehension of violation of the statute on its part, but it appears that this is one of three mills under common management and that there is no contention that there has been any violation by either of the others, although they have been investigated also and the injunction against them has been dissolved.

There is no occasion to dissolve the ordinary injunctive order which merely forbids or commands the doing of a particular act and which loses all practical significance with the passage of a short period of time. When a continuing injunction against the violation of a statute is granted, however, the effect is to place the one against whom it is issued under probation to observe the statute, and to add to the penalties prescribed by law for its violation the additional penalties of fine and imprisonment for contempt of court. This sort of government by injunction should not be unduly extended; and it cannot be said that there is abuse of discretion in dissolving such an injunction when it appears that it has been in effect long enough to accomplish the purpose for which it was granted and that there is no longer any reason to apprehend violation of the statute by the person enjoined.

There is nothing to the contrary in United States v. Swift & Co., 286 U.S. 106, 52 S.Ct. 460, 76 L.Ed. 999, the case upon which counsel for the Secretary chiefly rely. What was involved there was a consent decree in an anti-trust case which forbade certain forms of dealing by corporations which had been engaged in a conspiracy in restraint of trade. While the same corporations were in existence with the same potentiality for monopolizing trade and commerce they sought to have the decree amended by eliminating some of its key provisions. It was against this background that the Supreme Court held

that the modification of the decree was not warranted because change in conditions had not been shown. It is little short of absurd to contend that this decision requires that the consent decrees that the various administrative agencies have been obtaining should be extended in perpetuo against people who have been obeying the law over long periods and show no intention of doing otherwise.

For the reasons stated, the order appealed from will be modified on the company's appeal by striking therefrom the portion adjudging the company in contempt and directing the payment of wages and the compensatory fine and will be affirmed in so far as it directs the dissolution of the injunction.

Modified and affirmed.