Arthur J. GOLDBERG, Secretary of Labor, United States Department of Labor, Petitioner,

v.

Sam A. TRAKAS, Defendant.

Civ. A. 3423.

United States District Court
E. D. South Carolina,
Charleston Division.

July 19, 1962.

Beverley R. Worrell, Regional Attorney, U. S. Department of Labor, Birmingham, Ala., William T. Truett, U. S. Department of Labor, Birmingham, Ala., for plaintiff.

Boyd, Bruton & Lumpkin and Charles W. Knowlton, Columbia, S. C., for defendant Sam A. Trakas.

WYCHE, District Judge (sitting by designation).

The above case is before me upon motion of the defendant Sam A. Trakas to

dissolve and vacate an injunctive order of this Court issued by the late Ashton H. Williams, United States District Judge, on January 27, 1953.

The action was originally captioned "Maurice J. Tobin, Secretary of Labor, United States Department of Labor, plaintiff, v. Gulf Fruit Company, Inc., a Corporation, Peter P. Leventis and Sam A. Trakas." On October 17, 1952, the Secretary of Labor filed a complaint against Gulf Fruit Company, Inc., Peter P. Leventis and Sam A. Trakas, alleging violations of the Fair Labor Standards Act of 1938, as amended, 29 U.S.C.A. § 201 et seq., and praying for an injunction against all three defendants. On January 27, 1953, with the consent of all three defendants, the late Judge Williams signed the judgment of the Court which enjoined the defendants from violating the Fair Labor Standards Act of 1938. The order was general in nature and contained the following prohibitions: "(1) Defendants shall not, contrary to Section 6 of the Act, pay to any of their employees who are engaged in commerce, wages at rates less than seventy-five (75) cents an hour. (2) Defendants shall not contrary to Section 7 of the Act, employ any of their employees engaged in commerce, for a workweek longer than forty (40) hours unless the employee receives compensation for his employment in excess of forty (40) hours at a rate not less than one and one-half times the regular rate at which he is employed. (3) Defendants shall not fail to make, keep and preserve records of their employees and of the wages, hours and other conditions and practices of employment maintained by them as prescribed by the regulations of the Administrator issued, and from time to time amended, pursuant to Section 11(c) of the Act and found in Title 29, Chapter V, Code of Federal Regulations, Part 516."

Of the three defendants only Sam A. Trakas survives. Gulf Fruit Company, Inc. has been liquidated and Peter P. Leventis, who was president of Gulf Fruit Company, died in 1955. In March, 1953, defendant Trakas left Gulf Fruit Company, Inc. and since June, 1953, has been employed by Dixie Central Produce Company in Columbia, South Carolina. The Gulf Fruit Company was a corporation with its sole place of business in Charleston, South Carolina. After the death of Peter P. Leventis the corporation was merged into a holding company belonging to Peter P. Leventis' family. The business was liquidated, creditors paid, and its place of business in Charleston is still vacant.

In August, 1961, the Secretary of Labor filed a petition praying that Sam A. Trakas be adjudged in contempt of the 1953 injunction previously referred to because of alleged violations of the Fair Labor Standards Act occurring at Dixie Central Produce Company in Columbia, South Carolina, during the period of October 4, 1958, to January 30, 1960. Defendant Trakas in response to an Order to Show Cause issued by the late Judge Williams filed a return and answer to the petition and a motion to dissolve and vacate the injunction. These matters were heard before Judge Williams who instructed counsel to take depositions and such discovery procedures as they thought appropriate and to file briefs. On December 12, 1961, attorneys for the Secretary of Labor took the depositions of Sam A. Trakas and Chris P. Leventis, who is President of Dixie Central Produce Company. Subsequently counsel filed briefs but Judge Williams died prior to making disposition of the matter and the matter has now been argued before me.

The basic question for decision is the scope of the 1953 injunction. The only party to the action now surviving is Sam A. Trakas and I must decide whether the injunction follows Trakas individually and applies to him apart from his relationship with the two companies by whom he was employed in the last ten years.

While Trakas was with Gulf Fruit Company, Inc. he was Secretary of the Company and owned three per cent. (3%) of the stock. Because of his re-

sponsibilities with that company and his responsibility for the work force, it is conceded that he was a proper party to the injunction proceeding in the first instance, and by the consent to the injunction of 1953, it also appears to be conceded that there were violations of the Fair Labor Standards Act at Gulf Fruit Company, Inc. The Secretary of Labor urges a relationship between the two corporations Gulf Fruit Company, Inc. and Dixie Central Produce Company. However, there was no parent-subsidiary relationship between the two companies. The stockholders of both were individuals. The president of Gulf Fruit was Peter P. Leventis who was an uncle of defendant Trakas, and the president of Dixie Central Produce Company is Chris P. Leventis, who is also an uncle of defendant Trakas. The Leventis family commenced with a family company in Gastonia, North Carolina, with some members of the family later establishing businesses in the State of South Carolina, with Peter P. Leventis going to Charleston, and Chris P. Leventis going to Columbia. Neither in a legal sense nor in an economic sense is Dixie Central Produce Company a successor to Gulf Fruit Company. The latter has been liquidated and its place of business is still vacant. Dixie has always operated in Columbia, and there is nothing in the depositions nor argument by counsel to suggest that Dixie in any way took over the business of the now defunct Gulf Fruit Company. While members of the Leventis family are all stockholders in a holding company known as L. P. T. Company, Gulf Fruit and Dixie were not only separate corporations but their operations were so separate geographically and economically that each was a separate and distinct employer within the meaning of the Fair Labor Standards Act.

The injunction of 1953 was issued upon a complaint filed by the Secretary of Labor. The allegations of the complaint refer only to situations and alleged violations of the Fair Labor Standards Act at one place of business Gulf Fruit Company located at 34–38 Market Street, Charleston, South Carolina. While an order of the Court issued by consent of the parties is not to be deemed a contract, nevertheless, there is no basis for concluding that the injunction of 1953 was intended by the Court to be broader than what was sought by the plaintiff. Nor is there anything to suggest that the parties defendant to the proceeding intended to consent to an order which would be broader than the allegations and prayer of the complaint. The order was not sought on the basis of general bad conduct of the defendants in various localities nor in their earlier lives. On the contrary, the order was sought to remedy a situation at Gulf Fruit Company in Charleston, South Carolina.

Injunction is an extraordinary remedy and its issuance, application and enforcement is addressed to the best discretion of the courts, and extraordinary facts not being present at the time of issuance, it should not be construed to be broader than what was sought by the complaint nor the situation which it was designed to remedy. Of course, defendant Trakas is required to obey the law, and if he violates it, he will be subject to civil and criminal penalties wherever he may be. However, an injunction is not "open end" and does not follow a person to the ends of the earth or for an indefinite period or certainly not under circumstances such as exist in this case.

The situation precipitating the injunction of 1953 no longer exists and has not existed for some seven years. The business itself no longer exists. Of course, if there is a continuity of the same business or a dissolution or corporate reorganization designed to defeat the injunction, courts are not so naive as to be deceived by such maneuvers. See, Mitchell v. Ida-Lu Hat Co., Inc., unofficially reported at 29 L.C.No. 69,799; Durkin v. Jacobs, 23 L.C. No. 67,470. But where the new business is not a successor to the old, which, with its officers and key employees, was enjoined, they will not be deemed successors and

the drastic remedy of contempt will not be invoked. National Labor Relations Bd. v. Tupelo Garment Co. (C.A.5, 1941), 122 F.2d 603. There the National Labor Relations Board unsuccessfully sought to hold in contempt corporations formed by some officers and directors of a dissolved corporation which was under an injunctive order.

The Secretary of Labor relies upon the long litigation history of Swift and Company v. United States. In 1902, the Government commenced a civil suit for violation of the anti-trust act against Swift and Company which resulted in a general injunction. Swift and Company v. United States, 196 U.S. 375, 25 S.Ct. 276, 49 L.Ed. 518. Attempts were made to have the injunction modified which failed in the Supreme Court. United States v. Swift and Company, 286 U.S. 106, 52 S.Ct. 460, 76 L.Ed. 999. A recent attempt to modify the Swift injunction was rejected in 1960. United States v. Swift & Company, D.C., 189 F.Supp. 885. None of the decisions in that long litigation rejects the proposition that the courts have the power to modify or vacate at a later date an injunctive order. Such a question must be decided upon the special circumstances existing and the courts must exercise their best discretion determining whether an injunction has served its purpose and whether justice will be served by continuing it in force, modifying it, or vacating it. In the Swift cases there was a complete continuity of defendants and business operation which does not exist here. Likewise, Swift and Company continued to maintain the position of dominance in its field and hence a threat to free competition.

Fair Labor Standards Act injunctions have been dissolved in this Circuit by the Federal Courts in this State. Tobin v. Alma Mills (C.A.4, 1951), 192 F.2d 133, is an example. In that case, nine years after the issuance of the initial injunction it appeared to the Courts that the purpose of the injunction had been served and it was dissolved. Not only did the Court of Appeals distinguish the Swift cases, but it also pointed out the dangers of a perpetual injunction as being more restrictive than a probationary sentence imposed upon a convicted criminal: "There is no occasion to dissolve the ordinary injunctive order which merely forbids or commands the doing of a particular act and which loses all practical significance with the passage of a short period of time. When a continuing injunction against the violation of a statute is granted, however, the effect is to place the one against whom it is issued under probation to observe the statute, and to add to the penalties prescribed by law for its violation the additional penalties of fine and imprisonment for contempt of court. This sort of government by injunction should not be unduly extended; * * *."

In this case there is no showing nor allegation that Sam Trakas' present employer corporation is a successor to Gulf Fruit Company. It is not alleged nor argued that his move to Columbia in 1953 was for the purpose of evading an injunction. I find it impossible to read the injunction of 1953 as a prohibition against Trakas violating the Fair Labor Standards Act in some future unrelated employment. I further conclude that the subject matter of the original action resulting in the injunction of 1953 terminated for all practical purposes in 1955, and became moot.

Since there has been no hearing on the alleged violations by Trakas in his present employment, I express no opinion upon the validity of these allegations. However, I am of the opinion that such violations, if there be any in Columbia, South Carolina, are not a proper basis for holding him in contempt of the Order of this Court of January, 1953; that order having fully served its purpose is of no force and effect and should be vacated and dissolved.

It is, therefore, ordered, that the Order of January, 1953, be and the same is hereby vacated and dissolved.