**SECURITIES AND EXCHANGE COMMISSION, Plaintiff,**

v.

**BROADWALL SECURITIES, INC., Arnold Mahler et al., Defendants.**

**No. 64 Civ. 3995 (CHT).**

United States District Court, S. D. New York.

May 15, 1981.

Donald N. Malawsky, Regional Administrator, Securities and Exchange Commission Office, New York City, for plaintiff; Regina C. Mysliwiec, Michael H. Stone, Ethan Seer, New York City, of counsel.

Arnold Nelson Mahler, defendant pro se.

OPINION

TENNEY, District Judge.

Arnold Mahler, acting *pro se*, moves to vacate a permanent injunction entered

against him by this Court on January 12, 1967. The injunction, consented to by Mahler, restrains him from violating the antifraud provisions of the federal securities laws in connection with transactions in the securities of The Coast to Coast Company, Inc. ("Coast to Coast").[1]

*Background*

On December 29, 1964, the Securities and Exchange Commission ("SEC") commenced a civil injunctive action against Broadwall Industries, Inc. ("Broadwall") and four individuals associated with Broadwall, including its president, the defendant here. That action was based on allegations of fraudulent transactions in the securities of Coast to Coast in violation of Section 17(a) of the Securities Act of 1933, 15 U.S.C. § 77q(a), and Section 10(b) of the Securities Exchange Act of 1934, 15 U.S.C. § 78j(b), and Rule 10b–5, 17 C.F.R. § 240.10b–5. At the commencement of the action, a temporary restraining order was issued restraining the defendants from committing further violations of the statutes. A preliminary injunction was granted on March 8, 1965, and a permanent injunction was entered on January 12, 1967. Defendant agreed to the terms of the injunction without admitting or denying any of the allegations in the SEC's complaint.

Defendant is currently serving a twelve year prison term for an October 1977 conviction for fraud and conspiracy. This conviction stemmed from transactions independent from those that gave rise to the injunction. *United States v. Mahler*, 76 Cr. 1047 (S.D.N.Y.), *aff'd*, 579 F.2d 730 (2d Cir. 1978).

*Contentions of the Parties*

Defendant's motion rests on the assumption that the injunction should be dissolved once its purpose has been served. Accordingly, defendant alleges that Broadwall ceased operations in or about 1966; that Broadwall's charter was revoked by the State of New York in or about 1967; that Coast to Coast ceased operations in or about 1967; that the stock of Coast to Coast stopped trading in or about 1967, and that the injunction, therefore, has no proscriptive application.

Defendant also offers three technical grounds for vacating the injunction. He asserts that the original action should have been dismissed in 1966 when the SEC failed to take certain actions within a time limit specified by the court; that the court lacked both in personam and subject matter jurisdiction to enter the permanent injunction, and that the defendant was never

---

1. The injunction provides:

Upon the Summons and Complaint filed with this Court on December 29, 1964, and upon the decision of United States District Judge Edward C. McLean filed March 3, 1965 granting a Preliminary Injunction against the defendants herein, and upon all the other papers and prior proceedings had herein, and defendants Broadwall Securities, Inc. and Arnold Mahler having admitted the jurisdiction of this Court, and having entered a general appearance, and having consented in writing to this Judgment of Permanent Injunction, without admitting or denying the allegations contained in the Complaint for the purpose of this proceeding, it is hereby

ORDERED that the defendants Broadwall Securities, Inc. and Arnold Mahler and their officers, agents, servants, employees, attorneys, and those persons in active concert or participation with them be, and they are hereby permanently enjoined from, directly or indirectly, making use of the mails or any means or instrumentalities of interstate commerce, in connection with the offer, sale or purchase of the common stock of The Coast to Coast Company, Inc., while:

A. Making untrue statements or obtaining money or property by means of untrue statements of material facts and omitting to state material facts necessary in order to make the statements made, in the light of the circumstances under which they were made, not misleading, concerning, among other things:

(1) the nature and size of the operations of The Coast to Coast Company, Inc.;

(2) the contracts and present business opportunities of The Coast to Coast Company, Inc.;

(3) the present earnings of The Coast to Coast Company, Inc.; and

(4) the prospective market price of The Coast to Coast Company, Inc., common stock.

B. Employing devices, schemes and artifices to defraud as set forth in paragraph A hereof.

C. Engaging in acts, transactions, practices, and courses of business which operate or would operate as a fraud or deceit as set forth in paragraph A hereof.

served with a true copy of the order. Finally, relying on *Aaron v. Securities and Exchange Commission*, 446 U.S. 680, 100 S.Ct. 1945, 64 L.Ed.2d 611 (1980), defendant argues that the permanent injunction should be vacated because the SEC failed to establish scienter as an element of the alleged violations.

To refute defendant's assertions, plaintiff offers documentary evidence that Coast to Coast is currently a corporation in good standing in both Nevada, the state of its incorporation, and New York. Furthermore, plaintiff presents trade publications which show that at least nine firms will trade Coast to Coast securities over the counter, and that on March 6, 1981 at least one of those firms was quoting bid and asked prices on Coast to Coast securities.

Plaintiff contends, on the basis of this evidence, that there is no change in circumstances that warrants vacating the injunction. As discussed below, plaintiff offers further arguments to counter defendant's technical contentions. Finally, plaintiff asserts that dissolution of the injunction would have an adverse effect on the ability of the SEC to enforce the federal securities laws.

*Discussion*

■ Rule 60(b) of the Federal Rules of Civil Procedure states in pertinent part:

On motion and upon such terms as are just, the court may relieve a party or his legal representative from a final judgment, order or proceeding for the following reasons: ... (5) the judgment has been satisfied, released or discharged, or a proper judgment upon which it is based has been reversed or otherwise vacated, or it is no longer equitable that the judgment should have prospective application; or (6) any other reason justifying relief from the operation of the judgment.[2]

It is well settled that federal courts have the power to modify or revoke injunctions.

The Supreme Court, in *United States v. Swift & Co.*, 286 U.S. 106, 114, 52 S.Ct. 460, 462, 76 L.Ed. 999 (1932), stated that "[a] continuing decree of injunction directed to events to come is subject always to adaptation as events may shape the need." Furthermore, the Court stated that this rule applied to injunctions entered either after litigation or by consent. "[The consent is] not an abandonment of the right to exact revision in the future, if revision should become necessary in adaptation to events to be." *Id.* at 115, 52 S.Ct. at 462. Courts, however, will not wield that power lightly. In *Swift*, the movants sought to modify a consent decree that had been entered in an antitrust suit brought under the Sherman Act. The defendants claimed that the injunction should be modified because changed conditions made it unlikely that the defendants could resume their monopolistic practices. The Court rejected that argument. Noting that changes are inevitable, the Court stated that to modify an injunction, those changes must be "so important that dangers, once substantial, have become attenuated to a shadow.... Nothing less than a clear showing of grievous wrong evoked by new and unforeseen conditions should lead us to change what was decreed after years of litigation with the consent of all concerned." *Id.* at 119, 52 S.Ct. at 464. The *Swift* Court held that the defendants had not satisfied this heavy burden and refused to modify the consent decree. *See United States v. United Shoe Machinery Corp.*, 391 U.S. 244, 248, 88 S.Ct. 1496, 1499, 20 L.Ed.2d 562 (1968) ("*Swift* teaches that a decree ... may *not* be changed in the interests of the defendants if the purposes of the litigation as incorporated in the decree ... have not been fully achieved.").

Following *Swift*, lower courts have continued to place a heavy burden on the moving party to show such circumstances that would warrant vacatur of an injunction.

---

**2.** This motion is limited to Rule 60(b)(5). "That clause (6) applies only to cases of extraordinary circumstances was expressly held by *Ackermann v. United States*, 340 U.S. 193, 202

[71 S.Ct. 209, 213, 95 L.Ed. 207] (1950)." *Federal Deposit Insurance Corp. v. Alker*, 234 F.2d 113, 117 n.6 (3d Cir. 1956).

The Second Circuit, for example, in *King-Seeley Thermos Co. v. Aladdin Industries, Inc.*, 418 F.2d 31 (2d Cir. 1969), held that a district court could modify an injunction which limited defendant's use of the word "thermos" upon a showing that "the detailed provisions of the decree seriously and needlessly impeded" the defendant's ability to achieve the results intended by the injunction. Remanding the case for further proceedings, the court remarked that though there is power to modify even in the absence of changed conditions, "the power should be sparingly exercised." *Id.* at 35.

The Second Circuit reiterated the statement of the *King-Seeley* court in *Chance v. Board of Examiners*, 561 F.2d 1079 (2d Cir. 1977). The court there stated that "a decree may be modified 'where a better appreciation of the facts in the light of experience indicates that the decree is not properly adapted to accomplishing its purposes,'" and also emphasized that the moving party bears a heavy burden in making such a showing. *Id.* at 1086. *See Jordan v. Arnold*, 472 F.Supp. 265, 288 (M.D.Pa.1979) (modification of an injunction is appropriate only when the danger which the Court's decree was meant to prevent has almost ceased, a serious wrong has resulted from new and unforeseen conditions, and the hardship of the enjoined party is extreme, unexpected or oppressive"); *American Optical Company v. Rayex Corporation*, 291 F.Supp. 502, 510 (S.D.N.Y.1967) ("[In the absence of a showing of] changed circumstances so that continuance of the injunction is no longer justified and/or because it will work oppressively against the enjoined parties, . . . the injunction will not be disturbed.")

There is a dearth of cases in which injunctions have been vacated under circumstances even remotely similar to those alleged by the defendant. In *Tobin v. Alma Mills*, 192 F.2d 133 (4th Cir. 1951), *cert. denied*, 343 U.S. 933, 72 S.Ct. 769, 96 L.Ed. 1342 (1952), the court vacated an injunction which prohibited further violations of the Fair Labor Standards Act upon a showing that the defendant had complied with the injunction for nine years, that there was no evidence of an intent to further violate the Act, and that the presence of the injunction was hampering the potential sale of the company and its stock. The court found that the district court had not abused its discretion in dissolving the injunction, for it had been in effect long enough to accomplish the purpose for which it was granted and no future violations were anticipated. Similarly, in *Securities and Exchange Commission v. Wong*, 369 F.Supp. 646 (D.P.R. 1974), the court vacated an injunction upon a showing by the defendant that the injunction had been complied with for six years, that there was no evidence that the defendant intended to engage in the restricted activity in the future, and that the continued existence of the injunction was having an adverse effect on the defendant's psychological well-being.

Defendant's unsupported allegations fall short of satisfying the burdens met by the defendants in *Tobin* and *Wong*. Defendant has failed to offer any evidence showing that there is no danger of future violations if the injunction is vacated. Plaintiff's documentary evidence that Coast to Coast continues to exist as a recognized corporation, and that its stock is currently being traded, soundly refutes defendant's assertion that the company is defunct and its stock is inactive. Furthermore, defendant's statement that Broadwall has ceased operations is not dispositive of the instant motion. Defendant's ability to deal with the securities of Coast to Coast is independent of Broadwall's ability to do the same. Finally, defendant has offered no evidence of adverse effects caused by the injunction.[3]

In a case similar to the case at bar, *Walling v. Harnischfeger Corp.*, 242 F.2d 712 (7th Cir. 1957), the defendant petitioned the court to vacate a permanent injunction which restrained him from committing certain violations of the Fair Labor Standards Act. The Seventh Circuit affirmed the dis-

---

**3.** Defendant Mahler would have a difficult time showing oppressive effects of the injunction in any case, considering that he is presently incarcerated.

trict court's denial of the motion, finding that nothing in the record suggested that the injunction should be eradicated. The court was not impressed with the assertion that the defendant had fully complied with all the terms of the injunction for twelve years. "We would not approve of trading [defendant's] sustained obedience for a dissolution of the injunction. Compliance is just what the law expects." *Id.*, at 713. *See Securities and Exchange Commission v. Bausch & Lomb, Inc.*, 82 F.R.D. 50, 53 (S.D. N.Y.1979) ("to be 'told to do what the law requires to be done, . . . is no hardship") (citation omitted). Not even a generous reading of the papers filed by Mahler would justify a result different from that reached in *Walling*.

The remainder of the defendant's contentions are without merit. Defendant asserts that a court order of June 15, 1966 threatened the plaintiff with dismissal if the plaintiff did not take appropriate actions within 60 days. According to defendant, those actions were not taken and the case should have been dismissed at that time. The Court's subsequent actions, however, demonstrate that the plaintiff was never deemed to be in violation of that order.

██ Defendant also argues that the Court lacked both in personam and subject matter jurisdiction over this matter. Yet the defendant served an answer to the original complaint, admitted the jurisdiction of the Court in writing, and made a general appearance before the Court, all without raising any jurisdictional objections. It is well settled that "where a defendant files . . . an answer, without raising the defense of a lack of in personam jurisdiction, he waives any objection to that defect." *Rauch v. Day & Night Mfg. Corp.*, 576 F.2d 697, 701 (6th Cir. 1978). Subject matter jurisdiction was conferred by Section 22(a) of the Securities Act and Section 27 of the Securities Exchange Act, 15 U.S.C. § 77v and 78aa, respectively. *See Securities and*

*Exchange Commission v. Thermodynamics, Inc.*, 464 F.2d 457, 459 (10th Cir. 1972), *cert. denied*, 410 U.S. 927, 93 S.Ct. 1358, 35 L.Ed.2d 588 (1973).

In addition, defendant claims that the judgment is void because plaintiff failed to serve him with a true copy of the permanent injunction. Defendant's attorney, however, was served with such a document and defendant had notice of the document at all relevant times. In *Vuitton et Fils S.A. v. Carousel Handbags*, 592 F.2d 126, 129 (2d Cir. 1979), the Second Circuit stated that there is a "long settled principle that personal service is not required so long as those whom the plaintiff seeks to hold in contempt had actual notice of the decree." Defendant's failure to receive a true copy does not, therefore, warrant avoidance of the judgment.

Finally, defendant asserts that the Supreme Court's decision in *Aaron v. Securities and Exchange Commission, supra*, requires a dismissal of the judgment. In *Aaron*, the Court held that the SEC must prove scienter as an element of the offense in any suit for injunctive relief under section 17(a)(1) of the Securities Act of 1933, 15 U.S.C. § 77q(a)(1), or under Section 10(b) of the Securities Exchange Act of 1934, 15 U.S.C. § 78j(b). The Court held that the SEC does not have this burden in suits brought under Sections 17(a)(2) or (3).[4] The holding of *Aaron* clearly does not pertain to this motion. Here, the SEC proved nothing, nor was the agency required to prove anything. The defendant signed a consent decree in which he agreed to the terms of the injunction but admitted nothing. A similar situation was presented in *Securities and Exchange Commission v. Bausch & Lomb, Inc., supra*. Some of the defendants there had agreed to a pretrial settlement in which they consented to the terms of a permanent injunction in order to avoid litigating the issue of liability at trial.

4. Even if defendant's argument were viable, it is plain from a reading of the injunction, *see* note 1 *supra*, that it is certainly broad enough to cover future violations of §§ 10(b), 17(a)(1), 17(a)(2) *and* 17(a)(3). The Supreme Court's decision in *Aaron* made it clear that there is no requirement on the part of the SEC to prove scienter in establishing violations of the latter two Sections.

At the trial, the non-settling defendants prevailed on the merits. The settling defendants then sought to have the permanent injunction against them vacated. The court found that the settling defendants' liability had not been adjudicated at the trial, that the defendants "had already explicitly waived their right to a trial on the issue of their liability by negotiating a pretrial settlement with the Commission," 82 F.R.D. at 53, and that the defendants were bound by the injunction. Defendant Mahler has also waived his right to a trial on the issue of liability and is similarly bound by the injunction.

*Conclusion*

Defendant has failed to present a shred of evidence that there is a need to modify or vacate the permanent injunction which restricts his transactions in the sale and purchase of securities in the Coast to Coast Company. Accordingly, his motion is denied.

So ordered.