**LIFE TECHNOLOGIES, INC., Plaintiff,**

v.

**PROMEGA CORPORATION, Defendant.**

**No. Civ.A. AW–94–2776.**

United States District Court,
D. Maryland,
Southern Division.

Nov. 4, 1999.

Peter I.J. Davis, Rockville, Maryland, Robert J. Koch, Fulbright & Jaworski, Washington, D.C., for plaintiff.

James R. Troupis, J. Donald Best, John C. Scheller, Kim Cash Tate, Michael Best & Friedrich LLP Madison, Wisconsin; Grady J. Frenchick, Stroud, Stroud, Willink,

Thompson & Howard, Madison, Wisconsin, for defendant.

## *MEMORANDUM OPINION*

·WILLIAMS, District Judge.

Presently before the Court is Defendant's Emergency Motion to Vacate Judgment pursuant to Fed.R.Civ.P. 60(b)(5) and (6). Plaintiff filed an opposition, and Defendant replied accordingly. A hearing was held on this motion on October 28, 1999. Local Rule 105.6 (D.Md.). Upon consideration of the briefs of the parties, the arguments of counsel at the hearing, and the entire record, for the reasons stated below, the Court will grant in part and deny in part Defendant's motion.

## *BACKGROUND*

In October 1994, Plaintiff, Life Technologies, Inc. ("LTI") sued Promega Corporation ("Promega") for patent infringement of United States Patent No. 5,244,797 ("the '797 Patent"). The Complaint alleged that Promega was infringing upon the patent by making and selling RNase H-minus reverse transcriptase ("RNase H-minus") in the United States. In March 1995, the parties entered into a Settlement Agreement resulting in a Consent Judgment Order that this Court signed on March 31, 1995. As part of the Consent Judgment Order, Promega was "permanently enjoined from the manufacture, sale, distribution, and use of Infringing Products and from otherwise infringing, including directly infringing, contributing to, or inducing infringement of, the claims of the U.S. Patent No. 5,244,797." *See* Consent Judgment Order [10–1], at 2 (hereinafter "Promega Order" or "Consent Judgment Order").

Plaintiff now requests the Court to vacate the Consent Judgment Order pursuant to Rule 60(b)(5) and (6) of the Federal Rules of Civil Procedure, or to provide some declaration which would clarify certain portions of the Promega Order. Promega argues that vacatur or other modification of the Order would be equitable in light of this Court's recent ruling in a separate case, *Life Technologies, Inc. v. Clontech Laboratories, Inc.*, AW–96–CV–4080.[1] On July 16, 1999, in the *Clontech* case, this Court ruled that two of

---

1. *See* Court Transcript of July 13–15, 1999, 449: 14–16.

LTI's patents were unenforceable: the '797 patent at issue here, and the 5,668,005 patent ("005 Patent"). The ruling was based on this Court's finding that LTI had engaged in inequitable conduct, specifically that LTI withheld material information from the Patent and Trademark Office. Presently, an appeal of the *Clontech* decision is pending in the Federal Circuit. Both parties agree that the appeal should be resolved within the next twelve to eighteen months. Promega's main contentions are that the *Clontech* ruling is in conflict with the Promega Order, warranting a vacatur or other modification of that Order, and that to do otherwise would be inequitable given the grievous harm daily accruing to Promega and the scientific community while the Promega Order remains in place.

### DISCUSSION

Relief under Rule 60 should be based on equitable principles and a balancing of the hardships of the parties. Promega argues that it would be inequitable to allow the Promega Order to stand against it when no other persons or entities in the world are presently bound by the '797 Patent due to the *Clontech* ruling. Fed.R.Civ.P. 60(b)(5) provides:

> On motion, and upon such terms as are just, the court may relieve a party or a party's legal representative from a final judgment, order, or proceeding for the following reasons: ... (5) the judgment has been satisfied, released, or discharged, or a prior judgment upon which it is based has been reversed or otherwise vacated, or it is no longer equitable that the judgment should have prospective application....

This Rule gives the Court equitable power to relieve a party from a judgment when, in light of changed circumstances, it is no longer equitable that the judgment should have prospective application. "When confronted with any motion invoking this rule, a district court's task is to determine whether it remains equitable for the judgment at issue to apply prospectively and, if not, to relieve the parties of some or all of the burdens of that judgment on "such terms as are just." *Alexander v. Britt*, 89 F.3d 194, 197 (4th Cir. 1996).

To qualify for relief under Rule 60(b)(5), the movant must establish that "a significant change of circumstances warrants revision of the decree." *Rufo v. Inmates of Suffolk County*, 502 U.S. 367, 380, 112 S.Ct. 748, 116 L.Ed.2d 867 (1992). A material change of operative facts is sufficient to modify a consent decree. *See Plyler v. Evatt*, 924 F.2d 1321, 1324 (4th Cir.1991). The *Rufo* standard is a flexible standard that applies to all types of cases and has been adopted in recent Fourth Circuit cases as the standard for motions seeking relief from a consent decree. *See, e.g., Small v. Hunt*, 98 F.3d 789 (4th Cir.1996) (movant must demonstrate a significant change in circumstances for modification of a consent decree). The *Rufo* standard is a two-pronged test. The movant must show: (1) either a significant change in factual conditions or in law and (2) that the proposed modification is suitably tailored to the changed circumstances. *See Rufo*, 502 U.S. at 384, 112 S.Ct. 748. Promega has presented sufficient evidence to meet the *Rufo* standard. It also demonstrated that the balance of the hardships is in its favor. The Court, however, does have some reservations about the propriety of vacating the entire Consent Judgment Order and Settlement because they contain several provisions on matters beyond the enforceability of the '797 Patent. Accordingly, Promega's motion will be granted in part and denied in part.

### I. Changed Circumstances under Rule 60(b)(5)

The Court finds Promega's arguments with respect to changed circumstances brought by the *Clontech* ruling persuasive. In *Clontech*, this Court ruled against LTI rendering the '797 Patent unenforceable and stating:

> I do believe that it's been proven and the obvious result is that the patent is not enforceable because of the inequitable conduct that I have particularized....

Court Transcript of July 13–15, 1999, 449: 14–16. Promega relies heavily on this Court's finding of the '797 Patent's unenforceability as evidence of a clear change of circumstances under Rule 60(b)(5). LTI has

filed an appeal of the *Clontech* ruling with the Federal Circuit, and argues that the Court should deny Promega's request pending the decision on appeal. The Court concludes that its finding that the '797 Patent is unenforceable is a material change in circumstances that affects the Promega Order and warrants equitable relief.

The Fourth Circuit has modified decrees due to changed circumstances rendering the decree inequitable. *See generally Plyler v. Evatt,* 846 F.2d 208 (4th Cir.1988); *Nelson v. Collins,* 659 F.2d 420 (4th Cir.1981); *Tobin v. Alma Mills,* 192 F.2d 133 (4th Cir.1951). Absent some vacatur or modification of the Order, Promega would be the only entity unable to manufacture or sell products covered by the '797 Patent. *See Coca–Cola Co. v. Standard Bottling Co.,* 138 F.2d 788 (10th Cir.1943). In *Coca–Cola,* the Court considered similar facts in that the district court had issued a consent decree enjoining Standard Bottling from selling products labeled "Cola." Subsequent decisions by other courts allowed other companies to use the term on their product labels. Thus, upon Standard Bottling's request for modification, the district court granted the request and the Tenth Circuit affirmed based on the finding of changed circumstances. The Tenth Circuit explained:

> [I]t has been held [by other courts] that [Coca–Cola] has no exclusive right to the use of the word 'cola' standing alone or to any combination of the word 'cola,' except its own trademark of Coca–Cola. As a result many cola drinks similar in color or taste to that sold by [Coca–Cola] are sold in Denver and in all parts of the country.... All of these drinks are being sold in Denver in competition with that of [Coca–Cola]. As a matter of fact, any company other than [Standard Bottling] could manufacture and sell, without restraint, a cola drink....

*Id.* at 790. The changed circumstances in *Coca–Cola* was the basis for the modification

in that case. The Court believes that the same reasoning applies to Promega's motion under Rule 60(b)(5).

The Federal Circuit has also acknowledged relief under Rule 60(b)(5). *See Broyhill Furniture Industries, Inc. v. Craftmaster Furniture Corp.,* 12 F.3d 1080 (Fed.Cir.1993). In that case, while the Court reversed a district court's decision to vacate a judgment under 60(b)(4), it left open the possibility that a district court could award such relief under other clauses of Rule 60(b). The facts of the *Broyhill* case are similar to the instant case. The United States District Court for the Northern District of Mississippi heard a case in which a company sought a declaration that a patent was unenforceable due to the inequitable conduct of Broyhill. While that case was pending, Broyhill and Craftmaster, in a separate case in the District Court for the Western District of North Carolina, signed a consent judgment enjoining Craftmaster from the use of products covered by the same patent at issue in the Mississippi litigation. Later, the Mississippi court held that the patent was unenforceable. In the North Carolina court, Craftmaster sought vacatur of the consent order, and the court granted the motion due to changed circumstances, i.e., the Mississippi court's finding that the patent was unenforceable made the consent judgment void. Broyhill appealed the vacatur, and the Federal Circuit reversed, remanding the case to the district court for determination of whether the judgment should be vacated or modified under other provisions of Rule 60.

In accordance with Rule 60(b)(5), and decisions by the Fourth Circuit and Federal Circuit, the Court finds that the instant case warrants relief under the provisions of Rule 60(b)(5). The Court agrees with Promega that the *Clontech ruling* constitutes a material change in circumstances under Rule 60(b)(5)[2] and that some modification of the Promega Order is equitable.

---

**2.** Promega asserts alternatively that it should obtain relief under the catchall provision in Rule 60(b)(6) which provides for relief from a judgment for "any other reason justifying relief from the operation of judgment." This rule is invoked only in extraordinary circumstances. *See* 12

Moore's Federal Practice § 60.48[3][d], 60–176.1 (3d ed.1999) (citing *Vincent v. Reynolds Memorial Hosp.,* 728 F.2d 250, 251 (4th Cir.1984)). Promega contends that the Court's finding of the patent's unenforceability in *Clontech* is an extraordinary circumstance warranting modifica-

## II. Proposed Modification Suitably Tailored

Prong two of the *Rufo* standard requires that the movant submit evidence as to whether the "proposed modification is suitably tailored to the changed circumstances." *See Rufo*, 502 U.S. at 391, 112 S.Ct. 748. ·The Court must determine what changes are appropriate to address the factual developments or conflicts between legal standards and requirements of the Order. *See NAACP v. Seibels*, 20 F.3d 1489, 1504 (11th Cir.1994), *rev'd on other grounds*, 31 F.3d 1548 (11th Cir.1994). The changed circumstances that this Court considers are the changes in the enforceability of the '797 Patent and the consequences of the permanent injunction against Promega. The Court must devise a modification to the Promega Order which addresses the conflict between the Promega Order and the *Clontech* ruling. Although Promega's central request is vacatur of the Promega Order, it alternatively requests modification in the form of a Court declaration which would relieve it of restrictions imposed by the Promega Order. With respect to Promega's vacatur request, the Court believes that a full-fledged vacatur would be substantively inappropriate. Several clauses of the Promega Order and corresponding Settlement are not affected by the changed circumstances of the instant case. Therefore, this Court will modify the Order and make a declaration that Promega's manufacture, sale, distribution, or use of the compounds covered by the now unenforceable '797 Patent, will not violate the Promega Order. In effect, the Court will vacate ¶¶ 2, 3, and 4 of the Promega Order. Such modification is suitably tailored to address the changed circumstances in this case.

## III. Equitable Considerations

Considerations of equity and a balancing of the hardships of the parties are relevant to all clauses of Rule 60. Promega argues that it is "no longer equitable" for the Promega Order to stand when a party to that Order

deliberately and intentionally failed to disclose material information. Such information, it contends, could not have been known by it or this Court at the time of the issuance of the Promega Order. Plaintiff LTI argues that according to public policy, matters settled should be considered "forever settled as between the parties." *Federated Department Stores, Inc. v. Moitie*, 452 U.S. 394, 401, 101 S.Ct. 2424, 69 L.Ed.2d 103 (1981) (quoting *Baldwin v. Traveling Men's Association*, 283 U.S. 522, 525, 51 S.Ct. 517, 75 L.Ed. 1244 (1931)); *W.L. Gore & Assoc. v. C.R. Bard, Inc.*, 977 F.2d 558, 560 (Fed.Cir. 1992) (finality after consent judgment parallels adjudication after a full trial). Furthermore, LTI asserts that Promega has not met its burden of demonstrating why this Court should vacate or otherwise modify the Promega Order and that it would not be inequitable to bind Promega to the Order since Promega elected to forgo discovery and enter into a settlement. Accordingly, Promega should not now complain that it is inequitable to be bound by the settlement just because it has proved to be less favorable than it imagined. *See W.L. Gore*, 977 F.2d at 563.

The Promega Order enjoined Promega from the manufacture, sale, distribution, and use of infringing products. Promega contends that there is no longer any patent to infringe with respect to the '797 Patent after the ruling in the *Clontech* case. As a result of the *Clontech* ruling, the '797 Patent, and the other patents in that family are unenforceable against the world, except for Promega. *See Consolidated Aluminum Corp. v. Foseco Int'l Ltd.*, 910 F.2d 804 (Fed. Cir.1990) (inequitable conduct findings and declarations of invalidity extended to all those patents which derive from and are related to the patent obtained by inequitable conduct). In response to Promega's hardship arguments, LTI contends that although Promega has not manufactured or sold RNase H-minus reverse transcriptase in the

---

tion. Because the Court finds that Promega is entitled to relief under Rule 60(b)(5), there is no need to discuss the catchall provision in detail. The Court notes, however, that this case meets the standard for Rule 60(b)(6) relief as well. The

inconsistency of the Promega Order and *Clontech* ruling along with the recent finding of inequitable conduct by LTI constitute extraordinary circumstances.

United States for the last four years, it does sell them overseas and by its own admission, maintains a successful operation. LTI argues that it would suffer hardship if the Court vacates the Promega Order only to have the Federal Circuit hold the '797 Patent enforceable. LTI, however, indicated that while it is not aware of any new entities entering the market for compounds covered by the '797 Patent, if others did enter, it would simply sue them for damages. The Court has considered the pending appellate review of the *Clontech* matter and the hardship that it might cause both parties if this Court were to vacate or otherwise modify the Promega Order only to have the Federal Circuit reverse this Court's ruling in *Clontech*. Having found no cases specifically on point, the Court simply weighs the consequence of a successful appeal as one of the factors in balancing the equities. If a company as successful as Promega were allowed to make and distribute the enzyme for the intervening appeal period, serious market erosion could harm LTI. *See Bio–Technology, Gen. Corp. v. Genentech, Inc.*, 80 F.3d 1553, 1565 (Fed.Cir.1996). Additionally, Promega's customers who might be using the enzymes could create a whole new class of infringers.

The Court finds the possible harm to Promega to be more substantial. With respect to the hardships upon Promega, it is clear that Promega could successfully do business with the use of the compounds once covered by the '797 Patent. If no equitable relief is ordered, for at least twelve months while the case is on appeal, any other company would have a decided advantage over Promega, since under the *Clontech* ruling, they are free to manufacture, sell, distribute, and use the compounds covered by the '797 Patent. This twelve month loss to Promega would negatively affect its success in the sale of certain compounds in the current rapidly growing and competitive biotechnological field. Also, LTI has a remedy at law as it has acknowledged to the Court. In the event LTI prevails in the Federal Circuit, it would have a right to seek damages from any parties infringing upon the patent during the pending appeal period, including Promega. In seeking a modification, Promega accepts the risk that the Federal Circuit may reverse the *Clontech* ruling, thus halting its sale of RNase H-minus and subjecting it to liability for damages to LTI. Notwithstanding the risk, Promega, with full awareness of the pending appeal, has chosen to request a modification of the Promega Order.

While the Court finds that there are clear hardships on both sides in this matter, the balance of the hardships weighs in Promega's favor. In sum, the *Clontech* ruling rendering Patent '797 unenforceable works a significant change in circumstances requiring equitable relief under Rule 60(b)(5). This Court's ruling in *Clontech* represents a reversal of the material basis for the Promega Order. It is no longer equitable that the Promega Order in its entirety have prospective application. *See* Fed.R.Civ.P. 60(b)(5). Therefore, the Court will relieve Promega of some of the burdens of the judgment "under such terms as are just." *See Alexander*, 89 F.3d at 197; *Rufo*, 502 U.S. at 388, 112 S.Ct. 748 (subsequently decided authority indicating that "one or more of the obligations placed upon the parties has become impermissible under federal law" warrants modification or termination of a consent decree). In light of the inequities that would result if the Promega Order were allowed to stand in its entirety, the Court will declare that Promega may now manufacture, sell, distribute, and use compounds covered by the '797 Patent, including RNase H-minus. This modification is effectively a vacatur of ¶¶ 2, 3, and 4 of the Promega Order and any related terms of the Settlement. The Court finds that such equitable relief is appropriate given the nature of the changed circumstances and the balance of the hardships in Promega's favor. A separate Order consistent with this Opinion will follow.